AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH INSTAGRAM<br>USER "PAKRELIGIOUSLLC" THAT IS STORED AT A<br>PREMISES CONTROLLED BY INSTAGRAM | )<br>)<br>)<br>)<br>)<br>)    Case No. 20-SC-1759 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Possession of a firearm by a convicted felon. |
| 21 U.S.C. § 841(a)(1) | Distribution of a controlled substance. |
| 18 U.S.C. § 924(c) | Possession of a firearm in furtherance of a drug trafficking crime. |

The application is based on these facts:

See Attached Affidavit.

❏ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Joshua B. Rothman, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____**Telephone**_____ *(specify reliable electronic means)*.

Date: ___07/14/2020___

_____
*Judge's signature*

City and state: ___Washington, D.C.___

Deborah A. Robinson, U.S. Magistrate Judge
_____
*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means          ☑ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH INSTAGRAM<br>USER "PAKRELIGIOUSLLC" THAT IS STORED AT A<br>PREMISES CONTROLLED BY INSTAGRAM | )<br>)<br>)   Case No. 20-SC-1759<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Northern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment "B"

**YOU ARE COMMANDED** to execute this warrant on or before _____July 28, 2020_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Deborah A. Robinson, U.S. Magistrate Judge___ .
                                                                                    *(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____07/14/2020_____          _____
                                                                                    *Judge's signature*

City and state:      _____Washington, D.C._____          ___Deborah A. Robinson, U.S. Magistrate Judge___
                                                                                    *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>20-SC-1759 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A ("TARGET ACCOUNT")
*Property to Be Searched*

This warrant applies to information associated with the Instagram profile with usernames and/or account numbers:

**TARGET ACCOUNT**: vanity name **pakreligiousllc**

(**TARGET ACCOUNT**), that is stored at premises owned, maintained, controlled, or operated by Instagram, a company that is owned by Facebook, Inc. and headquartered in Menlo Park, California.

**ATTACHMENT B**
*Particular Things to be Seized and Procedures to Facilitate Execution of the Warrant*

I.      **Information to be Disclosed by Instagram**

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, and for the period from inception, to the present date, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram is required to disclose the following information to the Government for each account listed in Attachment A:

a.      All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

b.      All past and current usernames associated with the account;

c.      The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d.      All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;

e.      All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

f.      All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

1

g.        All communications  or other messages sent or received by the account;

h.        All user content created, uploaded, or shared by the account, including any comments made by the account on photographs, videos, live videos, or other content;

i.        All photographs, images, videos, and/or live video in the user gallery for the account, including all Metadata, geotag, and latitude and longitude for all photos;

j.        All location data associated with the account, including all Metadata, geotag, and latitude and longitude;

k.        All data and information that has been deleted by the user;

l.        A list of all of the people that the user follows on Instagram and all people who are following the user (i.e., the user's "following" list and "followers" list), as well as any friends of the user;

m.        A list of all users that the account has "unfollowed" or blocked;

n.        All privacy and account settings;

o.        All records of Instagram searches performed by the account, including all past searches saved by the account;

p.        All information about connections between the account and third-party websites and applications;

q.        All photographs, videos, and/or live videos posted using the account's "stories" function;

r.        All live video; and,

s.        All records pertaining to communications between Instagram and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 922(g)(1), 924(c) and 21 U.S.C. § 841(a)(1), including, for each user ID identified on Attachment A, information that:

a.  reflects communications relating to the use, possession of, access to, transfer, need for, trafficking in, or purchasing of narcotics or firearms;

b.  contains photographs of illegal narcotics, firearms and narcotics paraphernalia (to include, any firearms which are tools of the drug trade);

c.  reflects the ownership and use of the **TARGET ACCOUNT**;

d.  reflects communications between **TARGET ACCOUNT** and other individuals, discussing the possession, use, and trafficking of illegal narcotics and firearms;

e.  reflects communications between **TARGET ACCOUNT** and other individuals who may have assisted or provided support in the trafficking of illegal narcotics and firearms;

f.  documents or contains evidence of the obtaining, secreting, transfer, expenditure, and/or the concealment illegal narcotics and the locations used for those purposes;

g.  documents or contains evidence of the purchase of firearms for use in the narcotics trade, and the locations of those purchases;

h.  documents the use of any property as a premise to manufacture or distribute narcotics, or store firearms or other weapons as part of the trade; and

3

     i.   documents or identifies locations where the user of the **TARGET ACCOUNT** traveled to in regard to the possession of, access to, transfer, need for, trafficking in, or purchasing of narcotics.

## III.    Government Procedures for Warrant Execution

The United States Government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM USER ID DESCRIBED IN ATTACHMENT A THAT IS STORED AT A PREMISES CONTROLLED BY INSTAGRAM | **No. 20-SC-1759**<br><br>**UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION**
**FOR A SEARCH WARRANT FOR AN INSTAGRAM ACCOUNT**

I, Joshua Rothman, a Special Agent with the Federal Bureau of Investigation (hereinafter, "your affiant" or "I"), being duly sworn, depose, and state as follows:

**INTRODUCTION**

1.       I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I make this affidavit in support of an application for a search warrant for information associated with the Instagram vanity name "pakreligious1lc" (herein "**TARGET ACCOUNT**") that is stored at premises controlled by Instagram ("Instagram") a social-networking company owned by Facebook, Inc., and headquartered in Menlo Park, California.

2.       As discussed below, your affiant believes that there is probable cause that the **TARGET ACCOUNT** (as described in Attachment A, as incorporated herein), will contain evidence of unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), distribution and possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), as well as possessing a firearm during and in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c) (the "**TARGET OFFENSES**"), (as described in Attachment B, as incorporated herein).

3.    The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Instagram to disclose to the Government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, Government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## JURISDICTION

4.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237. Finally, the offenses under investigation are the subject of a grand jury investigation in the District of Columbia.

## AGENT QUALIFICATIONS

5.    I have been a Special Agent with the FBI, in Washington, D.C., for the past eleven years and I am currently assigned to an FBI Safe Streets Tasks Force. I am principally involved in narcotics and narcotics-related investigations, including narcotics investigations related to violent offenses. Since 2008, I have received training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, narcotics, white-collar crimes, search warrant applications, and various other crimes. Since January of 2015, I have been assigned to work on federal narcotics investigations on the FBI Washington, D.C. Safe Streets Task Force, a violent

crime and gang task force. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting these investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short-term and long-term narcotics and homicide investigations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized electronic surveillance; conducting court-authorized Title III wiretap investigations; and preparing and executing search warrants that have led to substantial seizures of narcotics, firearms, and other contraband.

6.      Since this affidavit is being submitted for the limited purpose of obtaining a search warrant for the **TARGET ACCOUNT**, I have not set forth every fact learned during the course of this investigation. I make this affidavit based, in part, on my personal knowledge and observations derived from my participation in this investigation, information provided by other law enforcement officers, reports and data provided by other officers, which I have read and reviewed, and, in part, upon information and belief.

## INSTAGRAM BACKGROUND INFORMATION

7.      Instagram owns and operates a free-access social-networking website and service of the same name that can be accessed at http://www.instagram.com. It can also be accessed by smartphone applications, such as the Instagram application of the same name. Instagram allows its users to share media (pictures and video) and communicate through their content-sharing platform. It also allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. The pictures, videos and other information that users

can publish (or "post") through Instagram can be viewed on Instagram, but also can be easily uploaded to other social media platforms including Twitter or Facebook.

8.     When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user may add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

9.     Instagram users may also send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile, but instead is viewable only by the users who were included.

10.    According to Instagram's privacy policy, which is publicly available online at http://instagram.com/legal/privacy/#section3, Instagram collects and stores information about its users. Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

11.    Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

12.     Instagram allows users to have friends, or "followers," which are other users with whom the user can share information without making it public. Followers on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information. Instagram also allows users to "follow" another user, which means that they receive updates by the other user. Users may also "unfollow" users, that is, stop following them or block them, which prevents the blocked user from following that user. Users on Instagram may also search Instagram for other users or particular types of photos or content.

13.     For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

14.     Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests. Instagram also collects information on the particular devices used to access Instagram. In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram. Instagram also collects other data associated with user content. For example, Instagram collects any "hashtags" associated with user content

5

(i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

15.     Instagram also may communicate with the user, by email or otherwise. Instagram collects and maintains copies of communications between Instagram and the user.

16.     Information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. An Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the

Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

   17. Based on my training and experience, I know that individuals involved in narcotics and/or firearms trafficking utilize their social media direct or private messaging platform to coordinate, record, and share information related to the violations committed. Through instruction and participation in investigations, I have become familiar with the manner in which traffickers conduct their illegal business and the methods, language, and terms which traffickers use to disguise conversations about their activities. From my training and experience, I have learned, among other things, that traffickers use social media to further their illegal activities and in many cases dealers will frequently "dump" or discard their social media accounts in the belief that, by so doing, they can avoid detection and thwart the efforts of law enforcement. Social media also enable co-conspirators to remain in constant or ready communication with one another without restricting either party to a particular geographic location, thus hampering surveillance by law enforcement authorities. Finally, traffickers sometimes do not expressly refer to firearms, drugs, or other weapons by name, and, when they do so, it is most often a mistake. Instead, they routinely refer to firearms or narcotics by using seemingly innocuous words or phrases in an effort to conceal the true nature of their illegal activities and thwart detection by law enforcement. Traffickers also frequently have access to several social media accounts and they periodically use newly acquired social media accounts, or frequently change usernames, to avoid detection and attempt to thwart apprehension by law enforcement.

18.     I also know that social media platforms, such as the **TARGET ACCOUNT**, used by traffickers, contain valuable information relating to their trafficking, including, but not limited to: call logs, phone books, photographs, voice mail messages, text messages, images and video, Global Positioning System data, and other stored data. This information can: (i) reflect the preparation for, arrangement of, and commission of the trafficking of firearms and/or narcotics; (ii) identify locations where traffickers traveled to before and after transporting or selling firearms and/or narcotics; (iii) reflect the ownership and use of the **TARGET ACCOUNT** (and computers, via IP address[1]) by the traffickers; (iv) document meetings and communications between firearms and/or narcotics traffickers, their customers, associates, and co-conspirators; (v) reflect communications between firearms and/or narcotics traffickers and other individuals, discussing the trafficking of firearms and/or narcotics; (vi) reflect communications and dealings between firearms and/or narcotics traffickers and other individuals who may have assisted or provided support in the trafficking of firearms and/or narcotics; (vii) document or contain evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of firearms and/or narcotics relating to the trafficking of firearms and/or narcotics; and (viii) document or contain evidence of the purchase of items from the assets derived from the trafficking of firearms and/or narcotics.

19.     I know that individuals involved in firearms and/or narcotics trafficking often use cellphone cameras to take pictures or videos through social media platforms of themselves as well

---

[1] An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

as other members of their organization (and screenshots of their communications), often engaging in illegal activities such as the distribution of narcotics and the possession of firearms, as well as to take pictures of assets acquired with the proceeds of firearms and/or narcotics trafficking. These photographs are often uploaded to the **TARGET ACCOUNT** for storage.

20.     Based on the information above, the computers of Instagram are likely to contain all the material described above with respect to the **TARGET ACCOUNT**, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

**IDENTIFICATION OF THE TARGET ACCOUNT**

21.     The **TARGET ACCOUNT** to be searched, as described in Attachment A, is believed to be utilized by Terron BARNES, who is involved in a conspiracy to traffic firearms and involved in the illegal sale of narcotics. The probable cause below establishes his connection to the **TARGET ACCOUNT**.

22.     As discussed below, I believe that there is probable cause to believe that the **TARGET ACCOUNT** (as described in Attachment A, as incorporated herein), contains evidence of the unlawful possession of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1), the illegal sales of narcotics, in violation of 21 U.S.C. § 841(a)(1), and the unlawful possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (the "**TARGET OFFENSES**") and that a search of the **TARGET ACCOUNT** may yield evidence of such crimes.

**PROBABLE CAUSE**

9

## BARNES' Fraudulent "Dispensary" Business

23.     I understand that the District of Columbia has set forth specific guidelines for opening a legal marijuana dispensary for the sale of medical marijuana within the District of Columbia.  Some of those guidelines include that an applicant must first apply for a license and pay an application fee to the D.C. Treasury. The application process takes months, and each application is subjected to a rigorous analysis by a panel. I further understand that all applicants must obtain a Basic Business License from the Department of Consumer and Regulatory Affairs with a General Business license endorsement. D.C. Code § 7–1671.06 serves as the guidelines for all marijuana dispensaries and cultivation centers in the District of Columbia.

24.     A google search revealed a link to the website linkedin.com that lists "Ali Vegaz" as "owner/CEO" of a company called "Pak Religious LLC."[2] Moreover, a public search of Facebook.com reveals an account for "Ali Vegaz" A review of the publicly available photographs on Ali Vegaz's Facebook page are consistent with photographs of BARNES. In the "About Me" section, BARNES a/k/a "Ali Vegaz" lists himself as "Owner at Pak Religious."

---

[2] Linkedin.com is an online service that can be accessed via websites and mobile apps where individuals and businesses can create an account, which is mainly used for professional networking. The information that is entered into the linkedin account comes from the account holder/user.

a.  BARNES has also posted pictures of himself on his Instagram "Story" which affiliate him with Pak Religious, such as this one he posted on June 25, 2020:



25.     A review of online public records reveals a District of Columbia Department of Consumer & Regulatory Affairs Corporate Filing for Pak Religious LLC with a business address of 3001 Branch Ave., Apartment 241, Temple Hills, MD 20748-1029.  As discussed above in paragraph 21, 3001 Branch Ave. is a former address connected to BARNES.  Although there is a business license in the name of Pak Religious, LLC, that business entity does not appear on any list of legally operated dispensaries in the District of Columbia.[3]  As mentioned above, a public records search of Pak Religious LLC indicates that the business address is not a public property, but an apartment located at 3001 Branch Ave., Apt. 241, Temple Hills, MD 20748-1029.  Upon investigation, it was determined that the address 3001 Branch Ave., Apt. 241, Temple Hills, MD 20748-1029, belongs to Marlborough Apartments, which is a residential property.  Your affiant

---

[3] I am aware that the District of Columbia's Department of Health keeps its official list of cultivation centers and dispensaries at
https://dchealth.dc.gov/sites/default/files/dc/sites/doh/publication/attachments/MMP%20memo%20May.pdf (last accessed June 16, 2020).

understands that D.C. Code § 7–1671.06 (g) requires that "[A] dispensary, cultivation center, or testing laboratory shall not locate within any residential district or within 300 feet of a preschool, primary or secondary school, or recreation center."

26.   An Instagram search for Pak Religious LLC revealed an Instagram account with the name of "pakreligiousllc". Pakreligiousllc posted the following publicly available photographs to its account:



These photographs depict "snowcaps" for sale, which based on my training and experience is an edible marijuana treat, as well as four other different types of marijuana, including "Mumbo Sauce." As noted above in paragraph 27, BARNES posted an Instagram picture of himself and another individual with what appears to be a one pound bag of "Mumbo Sauce" marijuana.

27.     The Ali Vegaz Facebook page also posted the following publicly available photographs to its account:



28.     The first photograph states that the "snow caps" are sold out. The second photograph is of a bag of marijuana called "Mumbo Sauce" with a reference to "@pakreligiousllc". "In Pak We Trust" can also be observed written across the top of the Mumbo Sauce bag. Based on the above information, your affiant believes that BARNES is the Owner/CEO of Pak Religious LLC and the user of the pakreligiousllc Instagram account.

29.     On June 25, 2020, @pakreligiousllc advertised the following "special" on its Instagram story.



I have observed that @pakreligiousllc posts such "specials" almost every day on its Instagram story. I am also aware that @pakreligiousllc has advertised that it is selling its wares in Miami, Florida, at a time when BARNES also indicated that he was in Miami, Florida.





30.    Through the Instagram account pakreligiousllc, BARNES has fraudulently represented himself as a licensed marijuana dispensary. On June 6, 2020, BARNES posted the following photograph to his Instagram account:



15

a.   In addition, on or about June 10, 2020, the profile of pakreligiousllc listed that it is a "licensed dispensary" as depicted in the below screenshot:[4]



31.   D.C. Code § 7–1671.06 (j) provides that "[n]o director, officer, member, incorporator, agent, or employee of a dispensary, cultivation center, or testing laboratory who has access to the medical marijuana at the dispensary, cultivation center, or testing laboratory shall have a felony conviction . . . ." As outlined in paragraph 22 above, BARNES has multiple felony convictions, any one of which would preclude BARNES from receiving a license to legally dispense marijuana in the District of Columbia.

32.   Your affiant further understands that D.C. Code § 7–1671.06(c) requires that "A dispensary may dispense medical marijuana and distribute paraphernalia to a qualifying patient or the qualifying patient's caregiver, and a qualifying patient or the qualifying patient's caregiver may obtain medical marijuana and paraphernalia from a dispensary, only if the qualifying patient

---

[4] As of June 15, 2020, a review of pakreligiousllc's Instagram profile reveals that it no longer lists itself as a "licensed dispensary" and instead, describes itself as a "licensed wellness center."

is registered to receive medical marijuana from that dispensary." Notwithstanding this provision, as depicted in the below Instagram conversation, BARNES has advised at least one customer of Pak Religious LLC that he does not require that a customer possess a medical marijuana license.



33.     Based on the above information, your affiant understands that BARNES cannot legally operate a marijuana dispensary and believes that BARNES is illegally distributing marijuana under the guise of being a licensed medical marijuana dispensary and/or attempting to appear as a legitimate dispensary in the District of Columbia.

## SEARCH WARRANT OF BARNES' RESIDENCE

34.     On July 1, 2020, the Honorable Deborah A. Robinson of the United States District Court for the District of Columbia, granted search warrant 20-SW-163 authorizing the search of BARNES' residence.

35.     The search warrant was executed on July 2, 2020. Present in the apartment at the time of execution was BARNES. Special Agents of the Federal Bureau of Investigation and the Bureau of Alcohol, Tobacco and Firearms proceeded to search BARNES' residence. Among the

items seized from BARNES' residence were: a Spike's Tactical AR-style pistol, a Glock 23 pistol, $18,377 in cash and approximately 11 kilograms of marijuana and THC products (to include their packaging). A field test performed on July 5, 2020, confirmed that the

## EVIDENCE TO BE OBTAINED

36.    The execution of a search warrant on the **TARGET ACCOUNT** would allow law enforcement to, among other things, obtain information that: (i) reflects communications relating to the use, possession of, access to, transfer, need for, trafficking in, or purchasing of firearms and illegal narcotics; (ii) reflects the ownership and use of the **TARGET ACCOUNT**; (iii) reflects communications between the **TARGET ACCOUNT** and other individuals, discussing the possession, use, and trafficking of illegal firearms; (iv) reflects communications between the **TARGET ACCOUNT** and other individuals who may have assisted or provided support in the trafficking of illegal firearms and narcotics; (v) documents or contains evidence of the obtaining, secreting, transfer, expenditure, and/or the concealment illegal firearms and the locations used for those purposes; (vi) documents the use of any property as a premise to manufacture or distribute, or store firearms or other weapons and narcotics; and (vii) documents or identifies locations where the user of the **TARGET ACCOUNT** traveled to in regard to the possession of, access to, transfer, need for, trafficking in, or purchasing firearms or narcotics.

## CONCLUSION

37.    Based upon the above facts, your affiant asserts that there is probable cause to believe that the **TARGET ACCOUNT** (as described in Attachment A) contains evidence of the **TARGET OFFENSES** (as described in Attachment B). Furthermore, based on the fact this Instagram account was created to promote and engage in sales for a fraudulent marijuana

dispensary, your affiant requests this this warrant be granted for the entire history of the **TARGET ACCOUNT** from inception to present.

38.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

39.     I further request that the Court direct Instagram to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Instagram, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

40.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.



_____
Joshua Rothman, Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on July 14, 2020.

_____
Deborah A. Robinson,
United States Magistrate Judge